**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) <br> ) Chapter 11 <br> ) |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., et al., | ) Case No. 15-01145 (ABG) <br> ) <br> ) |
| Debtors.[1] | ) (Jointly Administered) <br> ) <br> ) <br> ) <br> ) |

## JOINT NOTICE OF APPEAL

**PLEASE TAKE NOTICE** that Marc J. Rowan, David B. Sambur, David Bonderman, Kelvin Davis, Gary Loveman, and Eric Hession, pursuant to 28 U.S.C. § 158(a) and Federal Rules of Bankruptcy Procedure 8003 and 8004, hereby appeal to the United States District Court for the Northern District of Illinois the Bankruptcy Court's September 14, 2016 *Order Granting Official Committee of Second Priority Noteholders Motion to Compel Respondents to Produce Documents and Information in Response to Subpoenas* [Docket No. 4925] (the "Order"), attached hereto as Exhibit 1.[2]

The names of all parties to the Order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

---

[1] A complete list of the above-captioned debtors and the last four digits of their tax identification numbers may be found at https://cases.primeclerk.com/CEOC.

[2] The transcript of the September 14, 2016 hearing referenced in the Order is attached hereto as Exhibit 2.

**APPELLANTS:**  **KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Marc E. Kasowitz
David S. Rosner
Joshua Greenblatt
Daniel A. Fliman
Edward E. Filusch

1633 Broadway
New York, New York 10019
(212) 506-1700

-and-

**MCDONALD HOPKINS LLC**
David A. Agay

300 North LaSalle, Suite 2100
Chicago, Illinois  60654
(312) 280-0111

*Attorneys for David Bonderman and Kelvin Davis*

**WACHTELL, LIPTON, ROSEN & KATZ**
Marc Wolinsky
Martin J.E. Arms
Emil A. Kleinhaus

51 West 52nd Street
New York, New York 10019
(212) 403-1000

-and-

**AKIN, GUMP, STRAUSS, HAUER & FELD LLP**
Steven M. Pesner
Abid Qureshi
Joseph L. Sorkin

One Bryant Park
New York, New York 10036
(212) 872-1070

-and-

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Richard Lauter

550 West Adams Street
Suite 300
Chicago, Illinois 60661
(312) 463-3437

*Attorneys for Marc J. Rowan and David B. Sambur*

**GOODWIN PROCTER LLP**
Richard M. Strassberg
Daniel P. Roeser

620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800

*Attorneys for Gary Loveman*

**McDERMOTT WILL & EMERY LLP**
J. Christian Nemeth
Timothy W. Walsh
Monica S. Asher

227 W. Monroe St.
Chicago, Illinois 60606
Telephone: (312) 372-2000

*Attorneys for Eric Hession*

**APPELLEES:**  **JONES DAY**
Bruce Bennett
James O. Johnston
Sidney P. Levinson
Joshua M. Mester

555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 489-3939

*Attorneys for Official Committee of Second Priority Noteholders*

- 3 -

Dated: September 19, 2016
      Chicago, Illinois

MCDONALD HOPKINS LLC


By:   /s/ David Agay
      David A. Agay

300 North LaSalle, Suite 2100
Chicago, Illinois 60654
(312) 280-0111

KASOWITZ BENSON TORRES &
  FRIEDMAN LLP


By:   /s/ Marc Kasowitz
      Marc E. Kasowitz
      David S. Rosner
      Joshua Greenblatt
      Daniel A. Fliman
      Edward E. Filusch

1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for David Bonderman and Kelvin Davis*

GOODWIN PROCTER LLP


By:   /s/ Richard Strassberg
      Richard M. Strassberg
      Daniel P. Roeser

The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

*Attorneys for Gary Loveman*

WACHTELL, LIPTON, ROSEN & KATZ


By:   /s/ Marc Wolinsky
      Marc Wolinsky
      Martin J.E. Arms
      Emil A. Kleinhaus

51 West 52nd Street
New York, New York 10019-6150
(212) 403-1000


AKIN, GUMP, STRAUSS, HAUER & FELD LLP


By:   /s/ Steve Pesner
      Steven M. Pesner
      Abid Qureshi
      Joseph L. Sorkin

One Bryant Park
New York, New York 10036-6745
(212) 872-1070


LEWIS BRISBOIS BISGAARD & SMITH LLP


By:   /s/ Richard Lauter
      Richard Lauter

550 West Adams Street
Suite 300
Chicago, Illinois 60661
(312) 463-3437

*Attorneys for Marc J. Rowan and David B. Sambur*

- 4 -

MCDERMOTT WILL & EMERY LLP


By:     /s/ J. Christian Nemeth
        J. Christian Nemeth
        Timothy W. Walsh
        Monica S. Asher

227 W. Monroe St.
Chicago, IL  60606
(312) 372-2000

*Attorneys for Eric Hession*

# EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.*, | Case No. 15-01145 (ABG) |
| Debtors.[1] | (Jointly Administered) |

*No. 4796*

## ORDER GRANTING OFFICIAL COMMITTEE OF SECOND PRIORITY NOTEHOLDERS' AMENDED MOTION TO COMPEL RESPONDENTS TO PRODUCE DOCUMENTS AND INFORMATION IN RESPONSE TO SUBPOENAS

*(IN PART)*

Upon the motion (the "Motion")[2] of the Official Committee of Second Priority

Noteholders in the above-captioned cases (the "Noteholder Committee") for entry of an order

(this "Order") granting the Noteholder Committee's *Emergency Motion to Compel Respondents*

*to Produce Documents and Information in Response to Subpoenas* (the "Motion"), as more fully

set forth in the Motion; and after consideration of the Motion and due deliberation, it is

HEREBY ORDERED THAT:

1.     The Motion is granted *(in part)* as set forth herein.

2.     Respondents David B. Sambur, Marc C. Rowan, David Bonderman, Kelvin Davis,

Eric Hession and Gary Loveman are ordered to comply with the Noteholder Committee's

Subpoenas, dated June 28, 2016, and must produce all non-privileged documents and

information in response to those subpoenas ~~on or before September ___, 2016.~~ *(as modified on the record in open court.)*

3.  *Production must be commenced no later than 9/21/16, must be made on a rolling basis, and must be completed by 9/28/16.*

---

[1] A complete list of the above-captioned debtors and the last four digits of their tax identification numbers may be found at https://cases.primeclerk.com/CEOC.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

September 14, 2016

Date: ~~August      , 2016~~

Chicago, Illinois

The Honorable A. Benjamin Goldgar
United States Bankruptcy Judge

2

# EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


| | | |
|---|---|---|
| IN RE: | ) | No. 15 A 00149 |
| | ) | |
| CAESARS ENTERTAINMENT | ) | Chicago, Illinois |
| OPERATING COMPANY, INC., | ) | September 14, 2016 |
| | ) | 10:00 a.m. |
| Debtors. | ) | |


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE A. BENJAMIN GOLDGAR


APPEARANCES:


| | |
|---|---|
| For the Debtors: | Mr. Jeffrey Zeiger;<br>Mr. David Zott; |
| For WSFS: | Mr. Sidney Levinson; |
| For Eric Hession: | Mr. J. Christian Nemeth;<br>Mr. Monica Asher; |
| For CEC: | Mr. Thomas Kreller; |
| For Gary Loveman: | Mr. Richard Strassberg; |
| For Rowan and Sambur: | Mr. Marc Wolinsky; |
| For Mr. Bonderman and<br>Mr. Davis: | Mr. David Bonderman; |
| Court Reporter: | JERRI ESTELLE, CSR, RPR<br>AMY B. DOOLIN, CSR, RPR<br>United States Courthouse<br>219 South Dearborn Street<br>Room 661<br>Chicago, Illinois 60604 |

THE CLERK: Caesars Entertainment Operating Company, Incorporated.

MR. LEVINSON: Good morning, Your Honor. Sid Levinson, Jones Day, for the noteholder committee.

MR. SELIGMAN: Good morning, Your Honor. David Seligman on behalf of the debtors.

THE COURT: Mr. Seligman.

MR. WOLINSKY: Good morning, Your Honor. Marc Wolinsky, Wachtell Rosen, Katz for Mr. Rowan, Mr. Sambur and Apollo.

MR. ROSNER: Good morning, Your Honor. David Rosner from Kasowitz, Benson, Torres & Friedman for Mr. Bonderman, Mr. Kelvin Davis, and for TPG Capital.

MR. STRASSBERG: Good morning, Your Honor. Richard Strassberg from Goodwin Procter for Dr. Gary Loveman.

MS. ASHER: Good Morning, Your Honor. Monica Asher from McDermott Will & Emery for Eric Hession.

THE COURT: Good morning.

MR. LEVINSON: Good morning, Your Honor.

THE COURT: All right. We're here on

the committee's motion to compel production of documents in accordance with several subpoenas that were issued.

Before we get into that, I just wanted to say that to Dr. Loveman's counsel that something you are doing when you file papers in this case is causing Dr. Loveman to be listed as a joint debtor with Caesars. And I bet that is not a status that he wants, especially since, as I recall, you can't have a joint case between a corporation and one of its officers anyway.

And we've had to clean that up several times. So I don't know what you're doing, because, thankfully, I don't have to file papers in this or any other case. But if you could talk to the clerk's office about what it is. This is not the first time we've seen this happen, but it's happening here and it's happening over and over.

MR. STRASSBERG: Thank you, Your Honor. That was just brought to my attention, frankly, earlier this mounting.

THE COURT: Yes. It happened again.

MR. STRASSBERG: So it was already on our, you know, priority list to try to address the root cause of it. And we will try to get to the

4

bottom of it. And certainly if it's something we're doing, we'll try to change that quickly.

THE COURT: All right. Let me address the motion. And I have a couple of questions. And I'm going to give you some impressions, and then I'm going to give you some work to do, and that work will be done here today.

The first question is, this is a motion that has in a way come back to me from New York. But I remember the original motion that was filed that I said I didn't have the ability to address. And that was a motion that, as I recall, was to enforce deposition subpoenas when a couple of people didn't show up. And now I seem to have a motion to compel production of documents on a document subpoena. So it looks like I'm dealing with something that is not the thing I saw originally.

Am I correct on that?

MR. LEVINSON: You are correct, Your Honor. The prior motion was a motion to compel depositions in connection with the standing motion.

THE COURT: Oh, I see.

MR. LEVINSON: Yeah. And, ultimately, we did not press forward with that.

THE COURT: Okay.

MR. LEVINSON: And so this is -- and so this time around we took Your Honor's cue. We went to New York first with this motion.

THE COURT: Oh, I understand.

MR. LEVINSON: Yes.

THE COURT: So it's not as if it was returned to me. You went there first because the other one never got filed out there?

MR. LEVINSON: Correct, Your Honor.

THE COURT: Okay. Thank you.

The other thing I wanted to ask, and this is why I made Mr. Seligman appear today, or has to do with the debtors' position on this collectability issue.

The parties' papers on this are all over the place. And they're all over the place in ascribing a particular position to the debtors. And so I thought the debtors might be in the best posture to tell me exactly what the debtors do think about this.

What do the debtors think?

MR. SELIGMAN: Your Honor, the settlement contemplated in the plan, from our perspective, is a merits-based settlement. We did not discount for collectability – these individuals.

6

And our intention at confirmation is to proceed with our proposed settlement without any discounts for collectability. We're not going to be arguing that any of these defendants don't have the ability to pay. That's not an issue for us. That was not a determination ultimately.

So from our perspective, collectability is not an issue.

THE COURT: All right. Would you stipulate as a factual matter with the committee that the judgments, if entered, could be collected from these defendants? Is that what you mean when you say it's not an issue, that they could be collected, and will you stipulate to that?

MR. SELIGMAN: Your Honor, I don't think we could stipulate to the fact that the judgments, if obtained, could -- would be fully recoverable because that was not a calculus in our determination. But we could stipulate that judgments could be collectible. I'm sure that there's -- well, no, no -- but I don't know -- Your Honor, again, we did not -- because we didn't view collectability as an issue for these individuals, we did not go through -- we did not look at their net worth. So I can't -- I don't know -- I'm trying to be responsive to your

question.

THE COURT:  I hope.

MR. SELIGMAN:  It's like when I say can I be frank, Your Honor.

The -- so I'm -- I think -- we're willing to try to stipulate to something to make clear that we're not going to come back later and argue this collectability issue.  But I guess I just have a little concern with the way that Your Honor articulated it, because I couldn't stand here today and stipulate that we could necessarily collect a full judgment, whatever that judgment would be, against any one of these particular --

THE COURT:  Okay.

MR. SELIGMAN:  -- individuals, because we just -- we don't --

THE COURT:  Because if you could stipulate to that, then I could deny the motion and send you all home.

MR. SELIGMAN:  Yes.

THE COURT:  But I'm not going to do that now.  So that's what I needed to know.

MR. SELIGMAN:  But I guess, Your Honor, what I would say is -- well, I guess before I say more, do you have any other questions for me?

8

THE COURT: I don't. Is there something more you wanted to say?

MR. SELIGMAN: Well, I just wanted to say, Your Honor, that again, our position is is that the settlement that we have teed up in the context of this confirmation hearing, as I said, it's a merits-based settlement, and Your Honor is ultimately going to decide whether that is part of a confirmable plan or not.

And issues about -- I get the sense from what the second liens are arguing is that they're trying to make our confirmation case about something that it's not. And they're trying to suggest, Your Honor, that --

THE COURT: Go on. I'm listening.

MR. SELIGMAN: They're trying to suggest that perhaps our settlement isn't appropriate because we could have gone after these people on an individual basis. That was sort of the argument that we had in the context of the 105.

And from our perspective, again, we're putting forth this settlement, and Your Honor will either decide it's part of a confirmable plan or it's not. But it's not our case that we're suggesting that these individuals could or could not pay,

9

because it was a merits-based settlement. We looked at what we thought was the appropriate settlement, writ large, and what we were able to bring in, and that's the basis for our settlement, so...

THE COURT: Okay. Well, I think I understand what the committee is saying. I think the committee is saying that if that's not part of what you considered, it should have been. And since I think the TMT Trailer Ferry case supports them on that, I cannot say that, as the respondents would like me to say, that the question is simply not a relevant one.

I also don't think that we can rule out discovery on this issue because the debtors didn't consider it. The debtors don't get to essentially legislate out of existence a particular legal issue. The legal issues are what they are.

And, again, I think TMT and the other cases, and those standards have been decided repeatedly by the court of appeals in this circuit, make clear that this is a relevant area and an appropriate area of inquiry.

Now, that said, I agree with the respondents that the requests here are very broad, and, you know, I'm not so far removed from practice

10

that I don't read these requests and get this hollow feeling in the pit of my stomach when I imagine trying to respond to these.

But I have the ability to modify a subpoena. And so what I'm going to do -- and really, to give the committee some credit here, they expressed a willingness in their reply to talk about this, and that's what I'm going to have you go do. But I'm going to tell you some things that I think have to be changed here, and that will aid you in your conversations.

And then there's a conference room right across the hall, and it's unlocked. And I'll be here all day long. And you'll be here until we get this fixed, because there's no ability to continue this motion. We're on way too tight a time line.

Okay. So here are my views, to a degree, on some of problems with these requests:

First of all, I think the many parts of (b) that ask for information on any entity in which you have or had any legal interest, those have to go.

You know, just looking at the first request, if I owned a single share of stock in the

11

Coca-Cola Company, I would have to produce documents about the net worth of Coca-Cola. That's nuts. We're not going to be doing that. And you couldn't recover anything based on Coca-Cola's net worth, so why would we even do that?

And you'll see, there may be an exception, but by and large, all of the requests that talk about any entity in which you have or had any legal or equitable interest, that's objectionable.

Similarly, I think it is really overbroad and kind of overbearing to define "you and your" to include family members. I think "you and your" should refer to the person answering.

Now, I have another matter, and this is a question, really, and Mr. Levinson can help me with this. What's the significance of January 1st, 2014? Everything is keyed to that date. Is there some magic to that date?

MR. LEVINSON: It was really -- we were trying to find a date that was sufficiently recent that we didn't run into, for example, a case that they cited that goes back 32 years, but at the same time that would gather or enable us to get to documents, because we don't know exactly when a particular document may have been generated that may

12

reveal the assets against which execution could occur.

And so that date -- there was some -- there wasn't any magic to January 1, 2014. It was really designed to try to pick up what we thought would be sort of the core of the documents that we would need.

THE COURT: Okay. All right. Let me go through a few of these specifically. I have some general comments for you now.

Document request number 2, the committee is requesting documents sufficient to show all income from any source whatsoever. You know, that could be I sold my lawnmower to my nextdoor neighbor for 25 bucks. I mean, there has to be some kind of floor on what's relevant here.

And I don't think, and I think the committee made this clear, that the committee is interested in that kind of thing. It would be all too simple for the respondents to flood the committee with so many documents that they'd never be able to deal with them. And I think you can arrive at something that makes this reasonable.

Number 5, I don't think it's necessary to produce documents used to prepare the tax returns.

13

The tax returns are sufficient.

Number 6, I think the bank accounts or other accounts in question have to be accounts containing funds of the person answering, or at least in which the person answering has an interest. It's possible to be a signatory on an account for your aged parent because you're administering that account and because your parent is no longer competent to do so. I don't think the committee needs to know about that. I don't think the committee thinks it needs to know about that.

I have some concerns with 7 through 10 because I think there is some redundancy, and you should consider whether you really need all of these. Seven is about property, and 8 is about real property, and 9 is about value of property. And it seems to me -- and then 10 is about transfers of property. It seems to me that possibly all of these are really subsumed under number 7. And there may be a way to get rid of some of this. So consider that.

And then in 10, 10 not only concerns transfers, it also concerns purchases, sales, or uses. And just to go back to the lawnmower example, I just don't think Dr. Loveman, if he got his lawnmower repaired, has to produce a document

14

relating to the lawnmower repair, although I believe that reading it carefully, that document would fall under this request. That's crazy, that's burdensome, and the committee doesn't want it anyway.

Number 11 looks to me -- here's a part (b) that might be acceptable, but I think asks about entities in which you own any legal interest. This is redundant of number 3, which asks for the same thing, entities in which you have had any equitable interest. So I think there's a problem here.

Number 12, trust agreements. I think there has to be a financial interest on the part of the person responding in the trust. I don't think it's necessary to talk about any other trust. This is about assets of these respondents that could potentially be levied upon, or seized, or attached, or what have you, to satisfy a possible judgment.

So that's all I want to say about this right now. I think it is not too difficult to whittle these down into something that's not going to be fun to answer, but I think it's a lot more manageable and gets to what the committee really wants.

So what we will do now is adjourn, and I will let you go and have the conversation I think

15

you probably should have had already. But I know how these things go, so I don't blame you too much for that. And then if you need me, and I think you will at some point, you can simply knock on Nancy's door, ring the bell. We'll find our court reporter, or somebody like her, and we'll come back. Okay? I'll be around all day, except around lunchtime.

MR. WOLINSKY: Your Honor --

THE COURT: Yes.

MR. WOLINSKY: This is Marc Wolinsky for Apollo, and Mr. Rowan and Sambur.

Are you interested in hearing argument on the merits?

THE COURT: Not particularly, because I've read the papers, and I've read the TMT case, and I think these are relevant considerations.

I do want to address one thing, and that is Dr. Loveman's geographical objection. And that I will overrule, because the rule talks about traveling, and these are document subpoenas. I don't think Dr. Loveman is going to have to go anywhere for this.

I think that he could collect the documents, put them in a box, take them to his local post office or other shipper and send them to his

lawyers, who will then look at them and deliver them to Jones Day. He's not going to have to leave Boston, or wherever it is he lives. So I don't think there's a problem here. If there were a subpoena for his deposition, that would be another matter.

Also, if I were to quash this deposition on this ground, there would be another deposition requiring him to appear at some -- I don't know if Jones Day has a Boston office, but they probably have friends in Boston. And we're just going to be doing this again. And we're on, as I said, a very tight schedule here. So it would not be productive. It would only produce delay.

So since I don't think the rule is invoked, and since I think it would just produce delay if we were to be really, really literal about it, I will refuse to quash the subpoena to Dr. Loveman.

MR. ROSNER: Your Honor, David Rosner from Kasowitz Benson.

THE COURT: Yes.

MR. ROSNER: If you can give me a minute, I just want to go back to the collectability issue, because I'm having a disconnect with the court and not understanding exactly what the ruling is.

17

THE COURT: Okay.

MR. ROSNER: As we see this, not a single piece of financial information of Mr. Bonderman or Mr. Davis or any of the other respondents will lead to a single fact that will provide any evidence to the court at confirmation.

THE COURT: Well, why not?

MR. ROSNER: Because collectability here -- I would understand the point if there was a discount for collectability built into the settlement. If the settlement said we can only collect 4 to $4.3 billion from CEC because there's a risk that we wouldn't be able to collect on a judgment, whatever that judgment would be one day -- there is certainly no judgment, there is no litigation to lead to a judgment.

So if that were the argument, if that were the argument being made, then it would make sense for the committee to say, look, we want to disprove this collectability point because we want to be able to demonstrate that these judgments would be fully collectable, and, therefore, there can be no discount.

But you heard Mr. Seligman this morning tell you that that's not the case.

18

THE COURT: Right, but that's called the debtors essentially willing this issue out of the case. The committee's position is that entering into a settlement in which a host of claims in which only CEC is making a contribution is not fair and equitable.

And part of that argument is going to be that these judgments could have been collected. There were judgments that could have been obtained, and there were people out there that could have satisfied them, and showing that Mr. Bonderman, for example -- and you're shaking your head. But, I mean, I've read the briefs, and I'm sorry, but I buy this argument that the idea that Mr. Bonderman potentially has, you know, six old masters displayed in his garage that could be grabbed and sold. I mean, I think that's relevant. I can't imagine why it wouldn't be. I think the committee is entitled to come in and say these people are getting something for nothing, and instead there is something to be had here. It's not as if they're judgment proof. That's the argument.

MR. ROSNER: That's not the issue --

THE COURT: It is the issue.

MR. ROSNER: -- that the court will be

determining at conformation. What the court will be -- there are claims that have been asserted by the debtors in the range of 3.2 to $5.8 billion. That's what they say in their disclosure statement at page 43. This is the amount that we think there are claims. And there's a settlement of 4 to $4.3 billion that we've achieved.

THE COURT: Well, number one --

MR. ROSNER: And when that settlement is put forward in front of Your Honor, the committee's going to say a whole host of things.

Number one, they're going to say the claims are more than what the debtors say.

THE COURT: They are going to say that.

MR. ROSNER: They're going to say that. And then Your Honor is going to take evidence on that question --

THE COURT: That's right.

MR. ROSNER: -- and maybe Your Honor is going to make a determination that the claims are different. Then you're going to look at the settlement and say is the settlement fair and reasonable under those circumstances.

We can't prejudge what Your Honor's

going to find, whether you're going to accept the argument that there's some kind of 8 to $12 billion in claims, or that you're going to accept that the settlement that's on the table is approvable nonetheless. We don't know what this is.

But collectability is not an issue as to whether there are claims that exist that are greater, or it goes into Your Honor's determination about whether this settlement is fair and reasonable. And that's what I need to emphasize to Your Honor is that we're looking -- you are looking at a settlement that is on the table under this plan, whether there's a settlement that's hypothetical that other people could contribute to, that other people could pay, that is not something that Your Honor is considering.

So if the debtors were to say at confirmation, we now want to put on a record, and we want to say that, well, this could have happened or that could have happened, you would say, well, I remember being there on September 14th, and I'm not letting you put on that evidence. And that's fair. Because they're telling you right now that they didn't look at it, and they wouldn't look at it. And we've represented that they've never looked into the financial circumstances of these respondents because

21

it's irrelevant to the actual case that is before Your Honor.

THE COURT: Okay. First of all, 5.2 million and 4.1 million are not the same number. Okay? So if they're settling for less than they could have gotten, there must be some sort of reason there.

The Supreme Court says that one of the reasons that has to be considered, basic was the term the court used, is the collectability of any judgment. I think it's relevant, okay?

MR. ROSNER: But, Your Honor --

THE COURT: And it doesn't matter whether Mr. Seligman considered it or not. If he didn't, then he should have, and that's the committee's position.

MR. ROSNER: Your Honor --

THE COURT: And, you know, you've got to -- there's the strength of the claim, and then there's what you could get if you pursued it. The best claim in the world against a judgment-proof defendant is something you're not going to hold out on for a lot of money.

MR. ROSNER: But here the debtors are not saying that they made settlement on the basis of

22

their being judgment proof or $4 in a bank account or $40 million in a bank account.

THE COURT: Then perhaps I should deny confirmation now.

MR. ROSNER: Your Honor, you're not faced with the -- this is not the confirmation hearing.

THE COURT: I know.

MR. ROSNER: This is whether --

THE COURT: It's discovery, and that's why we should let Mr. Levinson --

MR. ROSNER: And this is whether there's going to be intrusive discovery into highly sensitive, personal financial information where Your Honor is at least obligated to balance what could be a reasonable concern and what could be an unreasonable concern.

THE COURT: I've balanced it. The balance weighs in favor of the committee. If these gentlemen don't want to be released under the plan, I'll quash the subpoenas today. All you have to do is tell me they don't want to be released.

But right now, they're subject to these releases. This a relevant consideration. I agreed with you that these were overbroad requests.

I am sending you nextdoor to do what the committee says it's willing to do, and that is talk about it.

But these folks are going to have to pony up the paper, okay?  We will adjourn now and let you speak to each other.

Thanks.

(Brief recess.)

THE CLERK:  We are recalling Caesars Entertainment Operating Company, Incorporated.

MR. LEVINSON:  Your Honor, Sidney Levinson, Jones Day, for the noteholder committee.

MR. WOLINKSY:  Marc Wolinsky, Wachtell, Lipton, Rosen & Katz, for Mr. Rowan, Mr. Sambur and Apollo.

MR. ROSNER:  David Rosner, Kasowitz, Benson, Torres & Friedman, on behalf of David Bonderman and Kelvin Davis.

MR. STRASSBERG:  Richard Strassberg Goodwin Procter, for Dr. Loveman, the non-debtor here.

THE COURT:  The non-debtor, right.

MS. ASHER:  Monica Asher, McDermott will & Emery, for Eric Hession.

THE COURT:  So where do we stand?

MR. LEVINSON:  Here's where we stand,

Your Honor:  We were prepared to meet and confer and stay here all day and into the evening, but we've been advised by the respondents that they intend to take an appeal and are not interested in having that dialogue.

THE COURT:  Well, all right.

MR. LEVINSON:  We do, Your Honor -- in response to your comments, the noteholder committee unilaterally in connection with the order granting the motion to compel did want to make a few modifications consistent with the guidance we have gotten from Your Honor.

THE COURT:  Yes, and the question is what that order looks like.  Let's just take a look at what you submitted.

Okay.  So I've got your draft.  But, obviously, I wasn't going to enforce the subpoenas as written.  I suppose we can -- I gave partial and almost complete guidance on what I thought was appropriate.

MR. LEVINSON:  Yes.  And, Your Honor, and what I was going to intend to do, and we can do it, of course, as Your Honor prefers, but I was going to advise Your Honor from the lectern of the changes that we would make.

25

THE COURT: Okay.

MR. LEVINSON: And we could incorporate into the order the specific changes as well, if Your Honor would like.

THE COURT: Well, we've got the transcript. I don't want the order to reflect something that I didn't do, which was simply grant the motion as presented.

MR. WOLINKSY: Your Honor, Marc Wolinsky. My suggestion is that the committee submit a revised subpoena, present it to you to be ordered, that you would order enforcement of their subpoena as revised with your guidance.

THE COURT: No, that --

MR. LEVINSON: We're not going to do that, Your Honor.

MR. WOLINKSY: And we could appeal from that.

THE COURT: That gets messy. Then you get into service issues. I don't want to do that. I mean, I have the power to modify the subpoenas. I guess I've done that to the extent that I can.

MR. LEVINSON: And this is a motion to compel, Your Honor, so to the extent Your Honor is compelling production, it can certainly be subject to

the guidance that you provided, which I think when you boil it down, we basically -- we would propose three revisions.

THE COURT: Okay. Go ahead.

MR. LEVINSON: Which I hope capture Your Honor's comments.

First, the definition of "You," we would eliminate subpart (a) from that definition. That was -- that was the -- actually, it's in the instruction. It's definition I.

THE COURT: Yes.

MR. LEVINSON: And we would strike subpart (a) which said for individuals "any of your immediate family members."

THE COURT: Well, do we have to -- you're proposing things you're willing to do. There are things that I said you had to do that you may not be willing to do, but because I said you had to do them, you have to do them. So rather than go through this and find out the extent to which you're willing to do what I told you you had to do anyway, I'm more concerned about the order. So --

MR. LEVINSON: Well, for the order, Your Honor, what we would propose is starting with what we submitted, we could change paragraph 1 to the

motion is granted, you know, subject -- as -- subject to the modifications on the record at the hearing held such and such.

THE COURT: Well, I would be inclined to do it slightly differently, but with the same goal in mind. I would modify paragraph 2 to say in response to those subpoenas as modified on the record in open court, and then let it go that way. And I would grant the motion in part, because obviously you're not getting everything you wanted, which I suppose would let you cross-appeal if you want.

MR. LEVINSON: I wouldn't anticipate that, Your Honor.

THE COURT: Not that I would ever suggest such a thing.

So I would change that so that it grants it in part, and then just make that change to paragraph 2, and you can take it upstairs, which I guess they can do since they're third parties.

MR. LEVINSON: And for the date, Your Honor.

THE COURT: The compliance date?

MR. LEVINSON: Yes. What we would propose is a rolling production to be completed by no later than September 28th, but rolling to start

immediately. Because there are some documents which they could put their hands on readily, and there are others that are going to take more time.

THE COURT: And then you would have me incorporate that in the order as a paragraph 3?

MR. LEVINSON: I would, Your Honor, or as a revision or addition to paragraph 2.

THE COURT: Okay. Any reaction to any of this? Obviously, you would rather that I just deny the motion, but that's not happening.

MR. WOLINKSY: Your Honor, I do think it would be cleaner if we had a subpoena reflecting all the changes that you believe are appropriate.

THE COURT: No.

MR. WOLINKSY: I don't think -- but if that's not the case...

THE COURT: You'll have the transcript. I think I made clear -- and I had my nice little list here, and I really went through all of it. I guess the only thing I didn't mention was I did -- I kind of ran out of gas -- but regarding request number 17, I thought that was too broad as well. You know, because of the word "involved." I mean, you could argue that all these gentlemen are involved in this case, please don't produce every

document involved in this case. I mean, that would be a shame. So that's too broad.

And then the little appendage at the end of the request, "including unsatisfied judgments," I just didn't think that was coherent in the sentence.

Other than that, I've said everything that I really have to say about this. And the comments and everything else stand, and you can see if you can get somebody upstairs to disagree.

So let's call this granting in part in the heading.

MR. STRASSBERG: Judge.

THE COURT: Yes.

MR. STRASSBERG: Before we finalize, if I might have a word with Your Honor with respect to Dr. Loveman, frankly, and Mr. Hession, the two employees who are part of the motion, Your Honor, just because I think they are, as employees, somewhat differently situated. And we have in our papers, and we have in discussions with counsel, offered to -- have kind of pointed out and offered to make available the publicly available information about our clients' compensation.

Because of Dr. Loveman's position, his

compensation has been publicly disclosed for the last almost five years. The additional public disclosures are available with respect to the compensation he earned as part of the LBO going back ten years. And while clearly it is not the scope of the request in the subpoena -- obviously, it's very different, Your Honor -- but from our perspective it seems that it affords the crucial information that the second liens say that they are interested in obtaining, not everything. But, again, because they are asking for things that are so personal and so private and so unusual to be ordered in many cases, we think that that would be an appropriate way to balance the request, and it would give them the basic information that allows them to assess the financial wherewithal of our clients, who, you know --

So we have the same issues about collectability clearly, Your Honor, where we disagree with Your Honor's assessment on that. But just when we talk about well what do they have with respect to information, here our clients, they do have information that's not everything that they've asked for, I agree, but that goes to the heart of their finances. And we would think that that presents a workable balance so that enforcement of the subpoena

31

with respect to our clients is not -- is not something that is required for the court to do.

THE COURT: I imagine the committee is going to disagree with that. And I imagine the committee would say that, you know, the kinds of things that get disclosed in public filings, salary, commissions, for example, are not the same as property that you own. So, again, we go to the, you know, five little masters hanging in the garage or where that money went. I mean, it's great to know what the salary is if you're garnishing wages, but it doesn't go to what property might have been accumulated that he still has.

MR. STRASSBERG: No doubt you're right, Your Honor, about that. My only point is that, you know, Dr. Loveman has been until he recently left last year, he has been at Caesars for 20-plus years. This has been his job, his full-time job. That is where his income has come from.

THE COURT: Yes.

MR. STRASSBERG: And for the last five years that income is publicly disclosed. So this is not an instance where, respectfully, there's any reasonable allegation that there are master paintings in the garage, right?

32

THE COURT: Oh, I don't know. My employer doesn't know about my art collection, if any.

MR. STRASSBERG: But, Your Honor, that --

THE COURT: It's just income, is the point. That's all it is. And, you know, as far as the longevity of his employment, they're not asking for 20 years of information.

MR. STRASSBERG: No, my point only is that there is no basis to be asserting that there is some undue amount of wealth that Mr. Loveman would possess. Not -- you know, obviously, he has been working through his position at Caesars for the last 20 years. We understand that.

Our point is simply that the information that's available already in the public filings allows an assessment of these issues from the 2Ls, from the second liens, in ways that we would suggest are acceptable. It's not getting to assets. It's not that level of detail. I understand. But still it is substantial information that is typically not available that is available with respect to our clients.

THE COURT: It's important

information, but it is not enough when it comes to collectability of a judgment.  That's the thing.  There is more there.

MR. STRASSBERG:  Understood, Your Honor.

THE COURT:  And as far as privacy concerns, I realize that there are privacy concerns here.  There was an offer, and I think it was an acceptable one, to make it subject to the protective order in the case.  There are things that can be done about privacy concerns.

You know, it is not as if they are strangers to this case.  They aren't.  They benefit from the confirmation of the plan, as the plan currently stands.  If they don't want that benefit, as I said, these subpoenas could be quashed.  If they were complete strangers, I might view all of this differently.  But they're not.

MR. STRASSBERG:  Understood.

THE COURT:  So I'm not going to limit it, and you'll have to take your chances upstairs.

MR. STRASSBERG:  Understood, Your Honor.

And if I might just on a different topic.

THE COURT:  Yes.

MR. STRASSBERG:  I understood Your Honor's ruling denying our geographic objection, and no question on that.  I just wanted to confirm really for the record that Your Honor's ruling was not addressing their waiver arguments.  We did have factual information with respect to the waiver argument.  Your Honor didn't address that --

THE COURT:  Well, I will assume, I will assume that the objection has not been waived for purposes of this decision.

MR. STRASSBERG:  Thank you, Your Honor.  Then we don't need to burden the record. Thank you.

THE COURT:  No, that's fine.

All right.  I'll continue playing with this order.

MR. ROSNER:  I think counsel had suggested two weeks.

THE COURT:  Let me get to the modification, and then we'll talk about that.

All right.  So now I have to make a separate paragraph 3, take out the date portion. It's getting cumbersome.

So now we'll say -- I'll just say the

production is to be done on a rolling basis and completed by September 28.

MR. LEVINSON: Commenced immediately on a rolling basis and completed by September 28.

MR. ROSNER: And, Your Honor, we would ask not to use language "commenced immediately," but we're okay with September 28th. We're not okay, obviously, with the order on the motion, but we understand the two weeks that's being offered by counsel.

MR. LEVINSON: It should commence immediately under our current schedule, Your Honor.

MR. ROSNER: But we are taking an appeal from the order, and so there needs to be time to actually prosecute that appeal. And if it says "commence immediately," we wouldn't want to fall afoul of anything that Your Honor thinks that "commence immediately" means this afternoon.

THE COURT: The timing problem is that you are going to have to get everything expedited in some way and get a district judge's attention quickly. And meanwhile, you know, the confirmation schedule that we've got is pretty brisk. And, you know, I understand on the one hand that if these folks have to go into their garage and take photos of

36

different paintings immediately, then the cat is sort of out of the bag, and why are we even prosecuting the appeal. On the another hand, if they don't have to do anything until the appeal is decided, then there's a risk of prejudice to the committee and everybody else in this case.

And that's a hard one to balance because even in this case we move a good bit more briskly than the district court typically moves. I can't help you with those people. You will have to deal with them yourselves.

MR. ROSNER: And we intend to move with all dispatch to do so. But I just would ask Your Honor not to put in language that says "commence immediately." But if Your Honor is inclined to put in an end date for production, then we will certainly understand what that means.

THE COURT: Let's do it that way because it still has to be done by then.

MR. LEVINSON: Could we ask as a compromise, Your Honor, that rolling production commence one week from today? And we've got a lot of depositions -- I mean, under the current schedule, we've got to read the documents. We're going to need experts potentially to read the documents. We've got

to take depositions.  We've got to figure out what's going to be evidence.  There's a lot to do.  It's not like we get them and then it's like we're all done.

THE COURT:  No, I know.

MR. LEVINSON:  So if it could commence in one week.

Thank you, Your Honor.

THE COURT:  Okay.  Here's what I said: Production must commence no later than 9/21/16, must be made on a rolling basis, and must be completed by 9/28/16.

MR. LEVINSON:  Thank you, Your Honor.

THE COURT:  All right.  So we will get that docketed right away, so you can get your notice of appeal on file.

MR. LEVINSON:  And, Your Honor, if I may go through the other revisions based on your comments, because we tried --

THE COURT:  The issues on the document request?

MR. LEVINSON:  Correct.

THE COURT:  These were your proposals that these folks weren't interested in discussing because they'd rather appeal.

MR. LEVINSON:  Right.

38

THE COURT:  Sure.  Go ahead and make your record.

MR. LEVINSON:  Right.  Thank you, Your Honor.

So, we've already talked about eliminating subpart (a) of definition I of "You."

And then we are going to make the following change in request numbers 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, and 15.  And the change is that there -- those -- all of those requests use the words "legal" or "equitable," which I think captured the concept of not having any financial or beneficial interest.  And so we are going to change that to beneficial or financial in each of those requests.  And I think that captures the -- you know, they actually have an interest.

THE COURT:  All right.

MR. LEVINSON:  And then the third change -- actually, there's going to be four now because of Your Honor's comments on request number 17.

But the third change was sort of the threshold question of materiality.  And we were originally going to propose a $10,000 floor on -- you know, on the request.  And thinking about it, since

39

we didn't really get a chance to negotiate with the other side, we're going to negotiate against ourselves, and we're going to raise that to $50,000.

And then the last changes, just to make the record complete, are the ones that Your Honor just suggested to request number 17. We're going to delete the words "are presently involved or have been involved," and we're going to delete the words, "including any unsatisfied judgments."

THE COURT: To the end of the sentence?

MR. LEVINSON: Yes.

THE COURT: All right.

Well, I mean, these are things you're willing to do. But, you know, that doesn't supercede what I said had to be changed, and there may be some inconsistency there. I think there is some. So, the modifications, as far as I'm concerned, are the combination of what I said had to be done and what you said you were willing to do.

Okay. So I've got the order. We'll get it upstairs as soon as we can. That, I think, takes care of this matter.

MR. WOLINKSY: Your Honor, Marc Wolinsky.

THE COURT: Yes, sir.

MR. WOLINKSY: I believe the order is appealable as of right as a collateral order, but I did want to flag for you, if a jurisdictional issue arises, we may be making a motion for leave to appeal. I don't think it's necessary, but right now I just wanted to let you know that that might be coming.

THE COURT: But that would not be leave from this court. That would get transmitted with the notice of appeal. In fact, I think it gets filed -- well, I'm not supposed to be playing lawyer here, as much fun as it is. I think it gets filed with your notice and the whole package gets transmitted.

MR. WOLINKSY: Yes.

THE COURT: So you decide what you want to do, but I think appellate matters, apart from, you know, stays pending appeal, are not my department.

MR. WOLINKSY: And the other thing, you did put your finger on it, there may be further motion practice to stay your order pending the appeal. But I listened to your transcript ruling the other day. If we have to make an application like

that, it will be in writing.

THE COURT:  Right.

MR. WOLINKSY:  And I anticipate we'll present it next week, if that's amenable to you.

THE COURT:  I'm here.

MR. WOLINKSY:  Great.

THE COURT:  So you do what you need to do.

MR. WOLINKSY:  Good.  Thank you.

MR. LEVINSON:  And, Your Honor, just so the record is clear, we believe that this order is interlocutory and not appealable.

THE COURT:  Right.  Well, you know, I often have lawyers who want to put appealability language in my orders.  And I never do it because I'm well aware as a former appellate lawyer that reviewing courts are not interested in the opinions of trial judges when it comes to matters of appellate jurisdiction.  So I don't weigh in.  This is something you can take up with the folks upstairs.

All right.

MR. WOLINKSY:  Okay.

THE COURT:  Thank you all.

MR. LEVINSON:  Thank you, Your Honor.

THE COURT:  Is there anything else

42

that we need to discuss on the case today since we have Mr. Seligman here?

MR. SELIGMAN:  No, we don't, Your Honor.

THE COURT:  All right.  Thank you all very much.

MR. LEVINSON:  Thank you, Your Honor.

MR. WOLINSKY:  Thank you.

MR. ROSNER:  Thank you.

(Which were all the proceedings had in the above-entitled cause, September 14, 2016, 10:00 a.m.)

I, AMY B. DOOLIN, CSR, RPR, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| CAESARS ENTERTAINMENT OPERATING | ) Case No. 15-01145 (ABG) |
| COMPANY, INC., et al., | ) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |

## MOTION FOR LEAVE TO APPEAL FROM ORDER COMPELLING PRODUCTION OF PERSONAL FINANCIAL INFORMATION

Marc J. Rowan and David B. Sambur (the "Apollo Individuals"), David Bonderman and

Kelvin Davis (the "TPG Individuals," and together with the Apollo Individuals, the "Sponsor

Individuals"), and Gary Loveman and Eric Hession (together with the Sponsor Individuals, the

"Individuals") hereby move for leave to appeal, pursuant to 28 U.S.C. § 158(a)(3) and Federal

Rule of Bankruptcy Procedure 8004, from the September 14, 2016 *Order Granting In Part*

*Official Committee of Second Priority Noteholders' Amended Motion to Compel Respondents to*

*Produce Documents and Information in Response to Subpoenas* [Dkt. No. 4925] (the "Order").[2]

The Individuals also have noticed their appeal directly, pursuant to 28 U.S.C. § 158(a)(1), as it

involves enforcement of subpoenas issued to third parties.[3]  In addition, the Individuals are filing

---

[1]    A complete list of the above-captioned debtors and the last four digits of their tax identification numbers may be found at https://cases.primeclerk.com/CEOC.

[2]    The Order is attached as Exhibit 1 to the September 19, 2016 *Declaration of Edward E. Filusch in Support of Motion for Leave to Appeal from Order Compelling Production of Personal Financial Information,* filed herewith ("Filusch Decl.").  References to "Ex." herein refer to exhibits to the Filusch Decl.  Citations to "[Dkt. No.]" refer to the docket in, *In re Caesars Entertainment Operating Co.*, *Inc.*, Case No. 15-01145 (Bankr. N.D. Ill.).  A proposed order is attached hereto as Exhibit A.

[3]    *See Adriana M. Castro, M.D., P.A. v. Sanofi Pasteur Inc.*, No. 13-C-2086, 2013 WL 3771493, at *3-4 (N.D. Ill. July 18, 2013) (allowing direct appeal of order compelling discovery

a Petition for Writ of Mandamus.

## PRELIMINARY STATEMENT

1.     The Bankruptcy Court's September 14, 2016 Order compels the Individuals to produce highly confidential, sensitive personal financial information that, as a matter of law, is wholly irrelevant to any issue respecting the confirmation hearing on the debtors' plan before the court.  If left undisturbed, the Individuals would be compelled to produce their tax returns, social security numbers, bank account statements, investment portfolio information, property records, and other categories of personal information.  In ordering such discovery, the Bankruptcy Court ignored, among other things, (1) representations by the Debtors, as plan proponents, confirming that this information is irrelevant, and (2) extensive, well-settled case law prohibiting pre-judgment discovery of a defendant's wherewithal to meet a judgment.[4]

---

where "order is directed to a disinterested third party that has no incentive to subject itself to contempt").  *See also Church of Scientology of California v. United States*, 506 U.S. 9, 18 n. 11 (1992); *Wilson v. O'Brien*, 621 F.3d 641, 642 (7th Cir. 2010); *U.S. Commodity Futures Trading Com'n v Parnon Energy Inc.*, 593 Fed Appx 32, 34–35 (2d Cir. 2014).  As the subpoenas were issued to third parties (*See* Ex. 27 [Dkt No. 4999] (noting Order entered against third parties)), the Second Lien Noteholders Committee (the "Committee") moved to compel in a completely separate proceeding in New York.  (*See* Ex. 12 [Dkt No. 4792] (the "Original Proceeding")).  The court in New York, with the Individual's consent, transferred that case to the Bankruptcy Court.  (*See* Ex. 13 [Dkt. No. 4791] (the "Transfer Order")).  The Order fully and finally resolved that proceeding; accordingly, the Order is final and appealable.  In consenting to the transfer, the Individuals in no way waived their right to directly appeal.

[4]     The Order is part of a record of Bankruptcy Court criticism directed at the Sponsor Individuals.  For example, on August 17, 2016 the Court *sua sponte* criticized the level of contribution the Sponsor Individuals were providing even as confidential negotiations continued. (*See* Ex. 14, at 20:7-22:13 (Aug. 17, 2016 Tr.)).  Nearly a week later, the Court further focused on the Sponsor Individuals' personal wealth, asking why they were not directly funding the settlement even though "some of them are very well to do."  (Ex. 9, at 185:25-186:2 (Aug. 25, 2016 Tr.)).  Citing the Court's "atypical views" regarding mediation, the mediator — Chief Judge, Joseph J. Farnan, Jr. (D. Del., Ret.) — chose to resign, rather than breach the "standard mediation procedures [he] adheres to."  (Ex. 5 [Dkt. No. 4885-1]).

2.      The subpoenas were issued by a dissenting group of junior creditors in connection with a January 2017 hearing on confirmation of the Debtors' amended plan of reorganization (the "Plan").  The Plan contains a comprehensive settlement and release of hotly-contested claims (that the independent committee of the Caesars Entertainment Operating Corp. ("CEOC") board (the "SGC") concluded had a value of between $3.2 and $5.8 billion) in exchange for consideration from Caesars Entertainment Corporation ("CEC") that the Debtors value at between $4.0 and $4.3 billion.[5]  CEC is making the plan contribution in exchange for CEOC releasing all claims against all putative defendants, including the Individuals.  The Debtors are seeking Bankruptcy Court approval of this extraordinarily valuable settlement Plan because the Debtors believe they are receiving fair value in exchange for settling the alleged claims.

3.      Critically, the Debtors are *not* justifying the settlement on the basis that they would have difficulty collecting a judgment had they chosen to prosecute, rather than settle, the alleged claims.  If the Debtors were putting "collectability" at issue, then the Individuals' financial wherewithal arguably would be relevant.  *But the Debtors are not claiming that collectability concerns justify settlement, and therefore discovery relating to collectability is simply not relevant*.  Indeed, at the hearing that led to the Order, the Debtors confirmed that they would not argue for any "discounts for collectability" or "that any of these defendants don't have the ability to pay."  (*See* Ex. 2, at 21:1-6 (Sept. 14, 2016 Tr.) (the "Transcript")).  The incredibly intrusive discovery ordered by the Bankruptcy Court thus has no relevance to any issue that the Bankruptcy Court will need to decide relevant to Plan confirmation.

---

[5]      The Debtors' ultimate parent company, CEC, through a combination with Caesars Acquisition Corporation ("CAC") and other transactions, is the direct contributor of this consideration and believes it is worth much more, as do TPG Capital, L.P. ("TPG") and Apollo Global Management LLC ("Apollo"), which manage funds that own in excess of 60% of the equity in CEC and CAC.

4.     The compelling factors here satisfy the standards for an interlocutory appeal of the patently erroneous Order:  (i) this motion presents a contested controlling issue of law; (ii) resolution will materially advance Plan confirmation and the overall bankruptcy case's conclusion; and (iii) resolution will clarify a fundamental legal component underpinning confirmation of the Plan.  Alternatively, in light of the important privacy considerations at issue, this Court should use its broad discretionary powers to grant leave to appeal.

## BACKGROUND

### A.     The Parties

5.     The proceeding involves the bankruptcy of CEOC (together with other debtors, the "Debtors").  CEOC is a subsidiary of CEC, which is not in bankruptcy.

6.     Marc J. Rowan is a Senior Managing Director and a co-founder of Apollo, and is a member of the CEC board's Human Resources, Executive, and Finance Committees.  David Sambur is an Apollo Partner, a member of CEOC's board, and is a member of the CEC board's Nominating & Corporate Governance Committee.  David Bonderman is Chairman and Founding Partner of TPG, a member of its Executive Committee, and serves on the CEC board of directors.  Kelvin Davis is a TPG Partner and a member of its Executive Committee, and also serves on CEC's board as member of the Human Resources, Executive, Finance, and Nominating & Corporate Governance Committees.  Gary Loveman is the Chairman of the Board of CEC and a CEOC board member, and, from 2003 until his retirement in July 2015, CEC's President and CEO.  Eric Hession was named CEC's CFO in January 2015, and also served briefly on CEOC's board.

7.     The motion that precipitated this appeal was made by the Committee, a group of second lien creditors of one of the Debtors, CEOC, the lone and extraordinarily litigious holdout of a Plan that enjoys the support of $14 billion of CEOC's $18 billion capital structure.  The

Committee includes four different hedge funds: Tennenbaum Opportunities Partners V, LP, Centerbridge Credit Partners Master LP, Palomino Fund Ltd., and Oaktree FF Investment Fund LP. (*See* Ex. 3, at 41 [Dkt. No. 4220-1]).

**B.      The Impact of the Financial Crisis on the Caesars LBO**

8.      On January 28, 2008, affiliates of TPG and Apollo (together, the "Sponsors"), along with certain co-investors, acquired CEC for approximately $30.7 billion (the "LBO"). (*See* Ex. 15, at 4 [Dkt. No. 4]).  Following the LBO, in an effort to address the severe impact of the 2008 financial crisis, CEC took numerous significant steps to provide CEOC with liquidity, extend maturities on debt obligations, and position CEOC to benefit from an expected turnaround of its business.  (*See id.*, at 1, 6).  The transactions provided CEOC with more than $2.3 billion in liquidity and $1 billion in debt relief, which allowed CEOC to repay billions to its creditors, forestalling bankruptcy.  (*Id.*, at 6-7).

9.      Nevertheless, and despite these efforts, on January 15, 2015 (the "Petition Date") CEOC filed a voluntary petition for chapter 11 relief in the Bankruptcy Court for the Northern District of Illinois, where the cases are now pending.  (*See* Ex. 16 [Dkt. No. 1]).

10.      On June 28, 2016, the Debtors filed the Plan.  (*See* Ex. 26 [Dkt. No. 4218-1]). The lynchpin of the Plan is a global settlement whereby CEC (and the Sponsors, through dilution of their equity in CEC) after a merger with CAC will contribute up to $6.7 billion in value to the estate (with a midpoint valuation by the Debtors of $4.0/4.3 billion) to settle all claims, including claims against the Individuals.  (*See* Ex. 3, at 11, 74, 134-137 [Dkt. No. 4220-1]).[6]

---

[6]      On March 25, 2015, the Bankruptcy Court entered an order approving the appointment of a bankruptcy examiner, Richard J. Davis (the "Examiner"), to investigate potential causes of action that the Debtors may have against various stakeholders.  The Examiner issued his preliminary report on March 15, 2016.  His final report was issued on May 16, 2016.  (*See* Ex. 18 [Dkt. No. 3720]).

11. The Debtors value the claims being released at between $3.2 billion and $5.8 billion, an assessment based on the conclusions of an investigation by the SGC. (*See* Ex. 3, at 43 [Dkt. No. 4220-1]). Accordingly, the Debtors believe that the global settlement is premised on the exchange of fair and reasonable consideration for the Plan's proposed releases.

12. On June 28, 2016, while the Committee was engaged in settlement negotiations with several of the Individuals pursuing this appeal, the Committee served the Individuals with the Rule 45 non-party subpoenas (the "Subpoenas") at issue. The Subpoenas seek incredibly invasive, overly broad, and irrelevant discovery into 17 categories of highly sensitive, confidential personal financial information, including detailed records relating to the Individuals' income, net worth, personal assets, as well as tax returns, bank statements, real estate, and personal property. (*See* Ex. 6 (Subpoenas); *see also, e.g.*, Ex. 2, at 18:12-18, 31:8-13 (Transcript) (stating that if Individuals have "six old masters displayed in [their] garage that could be grabbed and sold" the Court would like to know about it)).

13. Although the Subpoenas are facially unenforceable given that they seek completely irrelevant personal information the Individuals nevertheless chose to confer with the Committee regarding the scope of the Subpoenas. They were met with a total refusal by the Committee to respond substantively to their good-faith offers of compromise.

14. In particular, the Individuals agreed to produce — and, absent further developments, will produce — documents reflecting indemnities and insurance that are responsive to Request Numbers 16 (indemnities), 14 (insurance), and 17 (potential and actual judgments). That information itself, along with publicly-available compensation information of certain Individuals, would be more than sufficient to show the Committee that the Individuals are backed by indemnities from companies and funds with billions of dollars of assets; tellingly, the

Committee did not serve subpoenas on any of these companies, some of which also are would-be defendants released under the Plan. Despite these efforts to compromise, the Committee filed a motion to compel in the Southern District of New York. (*See* Original Proceeding).

15. The court transferred the Original Proceeding to the Northern District of Illinois. The transfer was docketed on August 31, 2016. (*See* Transfer Order). That same day, the Committee filed its *Amended Motion to Compel Respondents to Produce Documents and Information in Response to Subpoenas* (the "Amended Motion"). (*See* Ex. 19 [Dkt. No. 4796]).

16. At the September 14, 2016 hearing on the Motion (the "Hearing"), the Bankruptcy Court specifically summoned counsel for the Debtors and inquired whether collectability was a factor in the Debtors' decision to enter into the settlement embodied in the Plan. In response, the Debtors were explicit that in agreeing to the settlement CEOC's board of directors "did not discount for collectability," (Ex. 2, 5:24-25 (Transcript)), nor would the Debtors argue at trial for any "discounts for collectability." (*Id.* at 6:2-5). Rather, counsel for the Debtors confirmed that the settlement is a "merits-based settlement" and would be defended solely on that basis, such that "collectability is not an issue" for the confirmation hearing. (*Id.* at 6:7-8, 8:7, 8:24-9:9.3). Those representations were consistent with, and supported by, contemporaneous documents presented to the SGC that state that "[b]ecause of CEC's strong performance, *collectability not currently an issue*." (Ex. 24 (February 2016 SGC presentation)).

17. The Bankruptcy Court agreed at the Hearing that if the debtors would "stipulate" that any judgment could be collected from each of the Individuals, then the Court "could deny the motion and send you all home." (Ex. 2, at 7:18-19 (Transcript)). Although CEOC's counsel would not stipulate to the open-ended proposition that CEOC "could necessarily collect a full judgment, whatever that judgment would be, against *any one of these particular . . . individuals*"

- 7 -

(*id*. at 7:10-13), counsel was again emphatic that CEOC would not "argue this collectability issue" (*id*. at 7:7-8) and that the Committee was "trying to make our confirmation case about something that it's not." (*Id*. at 8:11-13).

18. Notwithstanding these assurances — which made clear that the discovery at issue is irrelevant to Plan confirmation — the Bankruptcy Court granted the motion to compel. Despite characterizing certain parts of the Subpoenas as "nuts" (*id*. at 11:2), "crazy" (*id.* at 14:3), and "really overbroad" (*id*. at 11:10-11), the Bankruptcy Court ordered sweeping and invasive disclosure from the Individuals including, among other things, their personal tax returns (*id*. at 13:1) and the statements for any accounts in which they have an interest (*id*. at 13:2-5), documents that will necessarily include the Individuals' social security numbers, account numbers, and similar extremely sensitive information.

19. When, after the Court issued its ruling, counsel for one of the Individuals sought to engage with the Court on the substance and merits of the dispute, the Court responded by suggesting that if the Debtors had not inquired into the net worth of the Individuals, maybe the Court should just "deny confirmation now." (Ex. 2, at 22: 3-4 (Transcript)). When counsel noted that the hearing was about the Subpoenas, not plan confirmation, the Court responded that the Individuals could avoid the discovery if they agreed to forgo being "released under the plan." (*Id*. at 22:19-20). The Court concluded: "these folks are going to have to pony up the paper." (*Id*. at 23:3-4).

## **QUESTION PRESENTED**

20. Whether the Bankruptcy Court properly ordered third parties to produce highly confidential, sensitive, personal financial information when the collectability of hypothetical non-existent judgments from such third parties is not at issue on confirmation of the Plan.

**ARGUMENT**

21.     Appeals from interlocutory orders of a bankruptcy court are permitted "with leave of the court." 28 U.S.C. § 158(a). District courts grant leave where, as here: (1) the underlying order involves a controlling question of law, (2) the issue is contestable, and (3) the resolution of the issue will speed up the litigation. *Wolf v. FirstMerit Bank, N.A.*, 535 B.R. 772, 775 (N.D. Ill. 2015), *appeal dismissed* (Mar. 25, 2016). Each prong is met here.[7]

**A.     The Motion Presents a Controlling Question of Law**

22.     A controlling question of law is a "pure question of law," which may "affect the outcome or the further course of litigation," even if it is not certain to do so. *Wolf*, 535 B.R. at 776 (granting leave where "success of the Chapter 11 reorganization will be premised" on the appeal); *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). Here, the Debtors reached a valuable settlement and will seek approval at Plan confirmation. The settlement is "merits-based," meaning the Debtors promote the settlement on the basis that they will receive fair value in exchange for releasing alleged claims. Whether the putative defendants have the financial wherewithal to pay any potential judgements was not — and will not be — a consideration at all. (*See* Ex. 2, at 5:22-6:6 (Transcript)).

23.     The Bankruptcy Court misapplied *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968), a case regarding settlements in bankruptcy. Applying the "*TMT* factors," the Bankruptcy Court determined production was required because it found consideration of "collectability" is mandatory, even though it is not at issue in the case. This is a pure question of law — the Bankruptcy Court itself

---

[7]     Alternatively, in light of the compelling privacy considerations at issue, this Court should use its broad discretionary power and grant leave of appeal to correct the Bankruptcy Court's erroneous interpretation of law, and avoid the substantial and irreparable harm that will result from forcing the Individuals to comply with the Order.

recognized that the issue is a "legal issue," and based the Order purely on its erroneous interpretation of the settlement. (*See* Ex. 2, at 9:15-22 (Transcript) ("*TMT* and the other cases . . . make clear that [collectability] is a relevant area and an appropriate area of inquiry.")).

24. Resolution of this legal issue will expedite the resolution of this action in correcting the Bankruptcy Court's misapplication of plan confirmation standards. A ruling correcting that misapplication and confirming that the Debtors do not need to address collectability would not only obviate the need for highly intrusive discovery, it will avoid wasteful litigation of an irrelevant issue, saving the parties and the Court the expense of an extensive and burdensome inquiry, including document production and testimony, into financial records of the Individuals. *See Wolf*, 535 B.R. at 776.

25. The Debtors are advancing the Plan settlement on the basis that CEC and CAC are providing sufficient consideration to settle the Debtors' potential claims against *all* potential defendants. If this Court fails at this juncture to correct the Bankruptcy Court's erroneous understanding, there is a significant risk that the Court could (erroneously) deny confirmation on the ground that the Debtors did not conduct an investigation of the Individuals' net worth. *See* (Ex. 2, at 22:3-4 (Transcript) (opining that, in light of the Debtors' failure to consider collectability, "perhaps [the Court] should deny confirmation now")); *Ehiorobo v. Talmer Bank and Trust*, 15-C-0169, 2015 WL 3936936, at *2 (E.D. Wis. June 26, 2015) (granting leave where resolution of issue "will likely determine whether the debtor is able to craft a viable plan").

### B. The Controlling Question of Law is Contestable

26. Courts in the Seventh Circuit hold that a matter is "contestable" where, as here, there are "substantial conflicting decisions regarding the claimed controlling issue of law." *Wolf*, 535 B.R. at 775. Such conflicting decisions need not be within the same district, or even within

the same circuit. *See In re Teknek, LLC*, 07-C-5229, 2007 WL 4557813, at *5 (N.D. Ill. Dec. 21, 2007), *aff'd*, 563 F.3d 639 (7th Cir. 2009). In granting the Amended Motion, the Bankruptcy Court not only departed from longstanding discovery precedent — indeed, we are aware of no case law supporting such broad ranging discovery — the Order also demonstrates a fundamental misunderstanding of the *TMT* factors where there is no "discount" for collectability.

> **i.      The Bankruptcy Court Wrongly Concluded that Discovery on Collectability is Necessary Even when a Settlement Does not Account for Collectability Risk.**

27.      The Bankruptcy Court's ruling leads to the unprecedented and untenable proposition that directors and officers of a debtor corporation, as well as other individuals who receive releases under a plan, are subject to broad and intrusive discovery — including of their tax returns — when there are any unproven allegations of fiduciary or other liability, a rule that inevitably will deter settlements. In granting the Amended Motion, the Bankruptcy Court cited *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc.*, for the supposed general proposition that a court *must* consider collectability in analyzing a contemplated settlement. (Ex. 2, at 9:5-22 (Transcript)). The *TMT* decision does not support this proposition. Instead, all that *TMT* does is list numerous factors that a bankruptcy court generally considers in evaluating a completed settlement; among those factors are the "*possible* difficulties of collecting on any judgment." *TMT*, 390 U.S. at 424 (emphasis added).

28.      But where, as here, a settlement is presented as being fair and reasonable *without* regard to the potential collectability of the to-be-settled claims and where the Debtors are disclaiming the notion that it was appropriate to take a discount on the basis of collectability concerns, courts analyze the settlement without addressing whether the underlying claims are collectable. *See, e.g.*, *Geltzer v. Kollel Mateh Efraim, LLC (In re Kollel Mateh Efraim), LLC*, 2013 WL 2149598, at *5 (Bankr. S.D.N.Y. May 16, 2013) (approving contemplated settlement

despite lacking information on collectability as plaintiff's "principal reason for settling [is that] it is his judgment that he will lose," not that the claims are not collectable).[8]

29.     If the Debtors — who, like proponents of a class action settlement, ultimately bear the burden to prove that a contemplated settlement is fair and reasonable, *In re Del Grosso*, 106 B.R. 165, 167-68 (Bankr. N.D. Ill. 1989) — have represented that the issue of collectability had no impact on their decision to accept the settlement, and that they will not present any evidence on that topic, then the Court (or the Committee, for that matter) has no basis or reason to independently consider collectability.

30.     Instead, as a legal matter, the settlement must rise or fall based on the other factors considered by the courts in determining the reasonableness of a settlement, including the complexity, duration, and expense of alternative litigation and the probability of success on the merits and damages.  If a debtor does not argue that a settlement should be authorized and a plan should be confirmed due to collectability issues on a potential judgment, *and waives any right to do so*, as it did here, there is no legitimate legal basis for a court to order discovery of sensitive personal information.

### ii.     The Order is Inconsistent with Prevailing Discovery Law

31.     It is black letter law, repeatedly enforced by courts in this Circuit and District, that "discovery regarding a defendant's financial condition is not permitted before entry of a judgment." *In re Roman Catholic Church*, 513 B.R. 761, 765 (Bankr. D.N.M.) (collecting

---

[8]     *See also, e.g.*, *In re Se. Banking Corp.*, 314 B.R. 250, 273 (Bankr. S.D. Fla. 2004) (collectability was "not relevant" in evaluating settlement); *In re Remsen Partners, Ltd.*, 294 B.R. 557, 563 (Bankr. S.D.N.Y. 2003) (collectability "not an issue"); *In re WCI Cable, Inc.*, 282 B.R. 457, 470 (Bankr. D. Or. 2002) (collectability "uncontested").  Indeed, the Bankruptcy Court has repeatedly approved settlements where the underlying briefing did not address collectability concerns.  (*See* Exs. 28-35 [Dkt. Nos. 1115, 1321, 2375, 2454, 4081, 4398, 4637, 4983]).

cases); *In re Cowger*, 2014 WL 318241, at *5 (Bankr. C.D. Ill. Jan. 29, 2014) (citing *Piller v. Perftech, Inc.*, 2011 WL 2293363, at *3-4 (N.D. Ill. June 9, 2011)).

32.     Even in the rare situations where courts permit financial discovery, however, they do not require production of invasive personal financial information.  Instead, courts "mediate between two reasonable but opposing interests: efficient administration of the bankruptcy estate, on the one hand, and protecting the legitimate confidentiality rights of third parties, on the other hand."  *Roman Catholic*, 513 B.R. at 766-77; *see also In re Glitnir Bank HF.*, No. 08-14757 (SMB), 2011 WL 3652764, at *5 (Bankr. S.D.N.Y. Aug. 19, 2011).

33.     Notably, in the case most central to the Committee's argument before the Bankruptcy Court, *In re Fontainebleau*, the Court granted the requested protective order prohibiting discovery into financials once it was made clear that collectability was not a factor in the contemplated settlement and that no evidence on the subject would be offered.  (Ex. 11, at 29:5-10 (Aug. 6, 2014 Tr., *In re Fontainebleau Las Vegas*)).  In this case, the Court likewise asked counsel for the Debtors whether the Debtors intended to present evidence on collectability, and the answer was clear and emphatic:  "We're not going to be arguing that any of these defendants don't have the ability to pay."  (Ex. 2, at 6:3-4 (Transcript)).  As in *Fontainebleau*, the discovery ordered here has no valid purpose.[9]

34.     The Bankruptcy Court also failed to properly consider the Individuals' legitimate privacy interests in ordering them to "pony up paper."  (Ex. 2, at 23:3-5 (Transcript)).[10]

---

[9]     Similarly, in *In re Roman Catholic Church of Diocese of Gallup*, the court greatly limited discovery into a third party's financial information to available insurance coverage and that which was publicly available on the third party's website.  513 B.R. at 767.  The confidentiality interests at issue here — the right to maintain the confidentiality of personal financial data (as compared with data of an organization) — are even more compelling.  *Id.*

[10]    These privacy concerns are amplified with a public interest in the context of tax returns.  Courts have held that "the public interest in encouraging the filing by taxpayers of complete and

Although the Court purported to address these concerns by ordering the discovery "subject to the protective order in this case," (*id*. at 33:9-10), that is not sufficient.  Documents produced "Advisors' Eyes Only" — the most restrictive category — may be shared with all counsel and advisors for the large number of parties to the bankruptcy case.  (*See* Ex. 25, at ¶¶ 9-10 [Dkt. No. 1575-1]).  That means hundreds (if not thousands) of individuals, at dozens of massive advisory firms, will have access to this information.  Moreover, the protections of the confidentiality order could fall away at trial.  When the issue of how information subject to the protective order came up previously, the Bankruptcy Court stated:  "I'm not going to clear the courtroom and shut off the telephone connection for this."  (Ex. 14, at 26:12-14 (Aug. 17, 2016 Tr.)).

**C.      A Successful Appeal Will Advance the Outcome of the Bankruptcy Case**

35.      Courts in the Seventh Circuit interpret the requirement that an appeal must speed the resolution of litigation very broadly.  *See, e.g.*, *Wolf*, 535 B.R. at 776 (granting leave to appeal where resolution of the issue would "speed up the litigation" and "move the case forward"); *Branham*, 2005 WL 1115856, at *3 (granting leave to appeal where resolution of the issue would "alter the manner in which the bankruptcy case proceeds from this point forward").

36.      Here, the Bankruptcy Court's misplaced focus on collectability threatens to prolong or even derail the confirmation process at the expense of the Individuals' valid privacy interests.  If the Committee can establish that the value of the claims being settled is outside of the range of a reasonable settlement, then the Plan will not be confirmed.  Granting the instant motion will thus provide clarity on this essential legal issue and will materially advance the case.

37.      Indeed, resolution of the collectability issue will provide certainty regarding what factors must be considered by the debtor, and what evidence may be considered by the

---

accurate returns" weighs against ordering their production.  *E.g.*, *Dunkin' Donuts Franchised Restaurants LLC* v. *Grand Cent. Donuts, Inc.*, 2009 WL 973363, at *2 (E.D.N.Y. Apr. 9, 2009).

Bankruptcy Court in approving a plan; clarity that is particularly important in light of the Bankruptcy Court's comment that due to the Debtors' failure to consider collectability, "perhaps [the Court] should deny confirmation now." (Ex. 2, at 22:3-4 (Transcript)). *See In re Lewis & Clark Apartments, LP*, 479 B.R. 47, 52 (B.A.P. 8th Cir. 2012) ("Determination of [the value of a creditor's claim] will control [the creditor's] rights in any plan which may be confirmed. . . . Since any plan confirmation will be dependent on valuation, resolution . . . would materially advance a final determination on confirmation.").

**D.      The Court Should, In Any Event, Exercise Its Discretion to Grant Leave to Appeal.**

38.      For all of these reasons, leave to appeal should be granted. Even if the Court has doubts about any particular factor relating to leave to appeal, in light of the significant privacy interests at issue and the unprecedented nature of the Bankruptcy Court's order, the Court should use its broad discretionary powers to grant leave to appeal in any event. *See In re IFC Credit*, 458 B.R. 911, 916 (N.D. Ill. 2011) (granting leave to appeal under 28 U.S.C. § 158(a)(3) simply as matter of broad discretion).[11]

**CONCLUSION**

39.      The Bankruptcy Court's ruling is patently erroneous, represents a misunderstanding of the issues to be presented at a confirmation hearing, and departs from established precedent regarding pre-judgment discovery of financial information. The Court therefore should grant the Individuals' Motion for Leave to Appeal or, alternatively, use its broad discretionary powers to grant leave to appeal pursuant to § 158(a)(3).

---

[11]      *Accord In re Ben Franklin Retail Stores, Inc.*, 97-C-6043, 2000 WL 28266, at *2 (N.D. Ill. Jan. 12, 2000) (same); *In re HA-LO Indus., Inc.*, 02 B 12059, 2003 WL 21982145, at *1 (N.D. Ill. Aug. 19, 2003) (same).

Dated: September 19, 2016
      Chicago, Illinois

MCDONALD HOPKINS LLC


By:   /s/ David Agay
       David A. Agay

300 North LaSalle, Suite 2100
Chicago, Illinois  60654
(312) 280-0111

KASOWITZ BENSON TORRES &
  FRIEDMAN LLP


By:   /s/ Marc Kasowitz
       Marc E. Kasowitz
       David S. Rosner
       Joshua Greenblatt
       Daniel A. Fliman
       Edward E. Filusch

1633 Broadway
New York, New York  10019
(212) 506-1700

*Attorneys for David Bonderman and
Kelvin Davis*

GOODWIN PROCTER LLP


By:   /s/ Richard Strassberg
       Richard M. Strassberg
       Daniel P. Roeser

The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

*Attorneys for Gary Loveman*

WACHTELL, LIPTON, ROSEN & KATZ


By:   /s/ Marc Wolinsky
       Marc Wolinsky
       Martin J.E. Arms
       Emil A. Kleinhaus

51 West 52nd Street
New York, New York  10019-6150
(212) 403-1000


AKIN, GUMP, STRAUSS, HAUER & FELD LLP


By:   /s/ Steve Pesner
       Steven M. Pesner
       Abid Qureshi
       Joseph L. Sorkin

One Bryant Park
New York, New York  10036-6745
(212) 872-1070


LEWIS BRISBOIS BISGAARD & SMITH LLP


By:   /s/ Richard Lauter
       Richard Lauter

550 West Adams Street
Suite 300
Chicago, Illinois 60661
(312) 463-3437

*Attorneys for Marc J. Rowan and David B. Sambur*

MCDERMOTT WILL & EMERY LLP


By:  /s/ J. Christian Nemeth
     Michael A. Pope
     J. Christian Nemeth


227 W. Monroe St.
Chicago, IL  60606
(312) 372-2000


     Timothy W. Walsh
     Monica S. Asher


340 Madison Avenue
New York, NY 10173-1922
(212) 547-5400


*Attorneys for Eric Hession*

No. _:__-cv-_____

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE: CAESARS ENTERTAINMENT OPERATING COMPANY, INC., ET AL.,

*Debtors.*

MARC J. ROWAN, DAVID B. SAMBUR, DAVID BONDERMAN, KELVIN DAVIS, GARY LOVEMAN AND ERIC HESSION,

*Movants.*

On Motion for Leave to Appeal
*Action Pending in the United States Bankruptcy Court for the*
*Northern District of Illinois (Case No. 15-01145 (ABG))*

## [PROPOSED] ORDER

| | | |
|---|---|---|
| Richard Lauter | Steven M. Pesner | Marc Wolinsky |
| LEWIS BRISBOIS | Abid Qureshi | Martin J.E. Arms |
| BISGAARD & SMITH LLP | Joseph L. Sorkin | Emil A. Kleinhaus |
| 550 West Adams Street | AKIN, GUMP, STRAUSS, | WACHTELL, LIPTON, |
| Suite 300 | HAUER & FELD LLP | ROSEN & KATZ |
| Chicago, IL  60661 | One Bryant Park | 51 West 52nd Street |
| Tel:  (312) 463-3437 | New York, NY  10036-6745 | New York, NY  10019-6150 |
| | Tel:  (212) 872-1070 | Tel:  (212) 403-1000 |

| | | | |
|---|---|---|---|
| Marc E. Kasowitz | David A. Agay | Richard M. Strassberg | J. Christian Nemeth |
| David S. Rosner | MCDONALD | Daniel P. Roeser | Timothy W. Walsh |
| Joshua Greenblatt | HOPKINS LLC | GOODWIN | Monica S. Asher |
| Daniel A. Fliman | 300 North LaSalle, | PROCTER LLP | MCDERMOTT |
| Edward E. Filusch | Suite 2100 | The New York Times | WILL & EMERY |
| KASOWITZ | Chicago, IL  60654 | Building | LLP |
| BENSON TORRES & | Tel:  (312) 280-0111 | 620 Eighth Avenue | 227 W. Monroe St. |
| FRIEDMAN LLP | | New York, NY  10018 | Chicago, IL  60606 |
| 1633 Broadway | | Tel:  (212) 813-8800 | Tel:  (312) 372-2000 |
| New York, NY  10019 | | | |
| Tel:  (212) 506-1700 | | | |

*Counsel for Movants*

This matter coming before the Court on the Movants' Motion for Leave to Appeal from the *Order Granting in Part Official Committee of Second Priority Noteholders' Amended Motion to Compel Respondents to Produce Documents and Information in Response to Subpoenas* [Dkt. No. 4925], entered on September 14, 2016 in *In re Caesars Entertainment Operating Co., Inc.*, Case No. 15-01145 (Bankr. N.D. Ill.),

IT IS HEREBY ORDERED THAT:

The Motion for Leave to Appeal is granted.

Dated: September __, 2016
      Chicago, Illinois

_____
           United States District Court Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In Re: Caesars Entertainment Operating Company     Case Number: 15 B 1145

Notice of Appeal

Certificate of Mailing

I, _gwendolyn rance_____ state that on __09/19/2016_, a copy of the Notice of Appeal, docket entry: ___5020___ was served on all parties identified as Registrants on the Court's Electronic Notice for Registrants.

Registrants Served Through the Court's Electronic Notice:
See Attached Page

For other recipients, a copy was served via First Class Mail on: _____.

Parties Served via First Class Mail:

Jeffrey P. Allsteadt, Clerk
U.S. Bankruptcy Court

__09/20/2016___
Date

gwendolyn rance
Deputy Clerk

APPELLANTS:                    **KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
                               Marc E. Kasowitz
                               David S. Rosner
                               Joshua Greenblatt
                               Daniel A. Fliman
                               Edward E. Filusch

                               1633 Broadway
                               New York, New York 10019
                               (212) 506-1700

                               -and-

                               **MCDONALD HOPKINS LLC**
                               David A. Agay

                               300 North LaSalle, Suite 2100
                               Chicago, Illinois  60654
                               (312) 280-0111

                               *Attorneys for David Bonderman and Kelvin Davis*

                               **WACHTELL, LIPTON, ROSEN & KATZ**
                               Marc Wolinsky
                               Martin J.E. Arms
                               Emil A. Kleinhaus

                               51 West 52nd Street
                               New York, New York 10019
                               (212) 403-1000

                               -and-

                               **AKIN, GUMP, STRAUSS, HAUER & FELD LLP**
                               Steven M. Pesner
                               Abid Qureshi
                               Joseph L. Sorkin

                               One Bryant Park
                               New York, New York 10036
                               (212) 872-1070

                               -and-

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Richard Lauter

550 West Adams Street
Suite 300
Chicago, Illinois 60661
(312) 463-3437

*Attorneys for Marc J. Rowan and David B. Sambur*

**GOODWIN PROCTER LLP**
Richard M. Strassberg
Daniel P. Roeser

620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800

*Attorneys for Gary Loveman*

**McDERMOTT WILL & EMERY LLP**
J. Christian Nemeth
Timothy W. Walsh
Monica S. Asher

227 W. Monroe St.
Chicago, Illinois 60606
Telephone: (312) 372-2000

*Attorneys for Eric Hession*

**APPELLEES:**

**JONES DAY**
Bruce Bennett
James O. Johnston
Sidney P. Levinson
Joshua M. Mester

555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 489-3939

*Attorneys for Official Committee of Second Priority
Noteholders*

Dated: September 19, 2016
        Chicago, Illinois

MCDONALD HOPKINS LLC

By:    /s/ David Agay
       David A. Agay

300 North LaSalle, Suite 2100
Chicago, Illinois  60654
(312) 280-0111

KASOWITZ BENSON TORRES &
  FRIEDMAN LLP

By:    /s/ Marc Kasowitz
       Marc E. Kasowitz
       David S. Rosner
       Joshua Greenblatt
       Daniel A. Fliman
       Edward E. Filusch

1633 Broadway
New York, New York  10019
(212) 506-1700

*Attorneys for David Bonderman and
Kelvin Davis*

GOODWIN PROCTER LLP

By:    /s/ Richard Strassberg
       Richard M. Strassberg
       Daniel P. Roeser

The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

*Attorneys for Gary Loveman*

WACHTELL, LIPTON, ROSEN & KATZ

By:    /s/ Marc Wolinsky
       Marc Wolinsky
       Martin J.E. Arms
       Emil A. Kleinhaus

51 West 52nd Street
New York, New York  10019-6150
(212) 403-1000

AKIN, GUMP, STRAUSS, HAUER & FELD LLP

By:    /s/ Steve Pesner
       Steven M. Pesner
       Abid Qureshi
       Joseph L. Sorkin

One Bryant Park
New York, New York  10036-6745
(212) 872-1070

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:    /s/ Richard Lauter
       Richard Lauter

550 West Adams Street
Suite 300
Chicago, Illinois 60661
(312) 463-3437

*Attorneys for Marc J. Rowan and David B. Sambur*

MCDERMOTT WILL & EMERY LLP

By:    /s/ J. Christian Nemeth
       J. Christian Nemeth
       Timothy W. Walsh
       Monica S. Asher

227 W. Monroe St.
Chicago, IL  60606
(312) 372-2000

*Attorneys for Eric Hession*